11/14/08 8:35 PM

`08 -CV- 11394-DPW`

FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

2008 NOV 17 A 10: 54

U.S. DISTRICT COURT
DISTRICT OF MASS.

                                    :
**BENJAMIN LIGERI**                 :
                                    :
        **Plaintiff,**              :
                                    :
**v.**                              :
                                    :
**YOUTUBE, INC., et al.,**          :
                                    :
        **Defendants.**             :
                                    :

*(Over
letter & Motion
emailed
to
Defendants,
to avoid delay)*

## PLAINTIFF'S RESPONSIVE MOTION TO DENY
## DEFENDANTS' MOTION TO DISMISS OR TRANSFER COMPLAINT

Pursuant to the Federal Rules of Civil Procedure, Federal and State laws and Constitutions, and common legal prudence and the basic interests of reason and justice, Plaintiff moves the Court to deny defendant Google Inc.'s and defendant YouTube, LLC.'s ("Defendants") Motion to Dismiss or Transfer Complaint (hereinafter "Motion to Transfer"). As set forth in the accompanying memorandum of law and as set forth in Defendants' Memorandum of Law In Support of Their Motion To Dismiss or Transfer (hereinafter "Memorandum"), this Court should deny Defendants' Motion to Transfer for several reasons, but mainly for the one underlying reason that the YouTube Terms of Use--which Defendants solely rely upon in their arguments for a case transferral--was not agreed to by the Plaintiff, is not a valid agreement, and if it were a valid agreement, the YouTube Terms of Use ("YouTube Terms") would still not apply to the allegations

Dockets.Justia.com

in the Complaint.

If Defendants would like to argue Plaintiff's agreement to a set of Terms, they <u>must</u> furnish proof of said agreement, which, in all jurisdictions in the United States, is usually shown by a signature on a document. In fact, two signatures. But any other written agreement or oral agreement may be sufficient as well. Because the Defendants have provided no proof of agreement to the YouTube Terms (save for an <u>idea</u> of potential mechanical "agreement" but no actual digital proof), their argument on behalf of said Terms--and therefore their whole motion--is moot. Of course, the reason Defendants have provided no proof of agreement to the Terms is because there exists no proof of agreement, and because there was <u>no</u> agreement to the YouTube Terms. Any agreements and contractual arrangements that were entered into between the Plaintiff and the Defendants were done by the only method possible when dealing with YouTube or Google, and that method is by email and unilateral contracts--usually made through the media. There are other methods possible of Agreement when dealing with <u>other</u> companies, but those methods do not exist when dealing with the Defendants in question. And because the email option barely exists, the Court truly needs to look at the unilateral contracts--as well as the circumstances of the Plaintiff's relationship with the Defendants and the benefits conferred to each party--in order to assertain liability in this case.

In Plaintiff's accompanying memorandum of law, he argues that he did not agree to the YouTube Terms, that he did not read the YouTube Terms, that one does not need to read the YouTube Terms, does not need to open the Terms, and <u>one does not even need to know that the YouTube Terms exist in order to become an account holder on YouTube.</u> Now, even the Defendants would agree that one does not even have to open the YouTube Terms to become an account holder on YouTube, which would therefore prove that one does not have to agree to them

and can't legally agree to them if they did not read them at the time of signing up, as is the case with Plaintiff, who did not read the YouTube Terms when he signed up for an account at YouTube.com and quite possibly didn't even know that they existed. Further, Plaintiff argues that, even if he "agreed" to the YouTube Terms, they are still inapplicable, unconscionable, and that the Defendants are fully aware that no reasonable person can or does agree to the YouTube Terms (nor even reads them), and they further violate Defendants' cited case *Silva*, 239 F.3d and due process.

Additionally, Plaintiff argues in his accompanying Memorandum that the YouTube Terms, even if enforceable and agreed upon by Plaintiff (which is not the case), do not dictate the forum for Plaintiff's Complaint, as they only dictate the forum for disputes with the "YouTube website" and one cannot have a dispute with a website.

Further, the YouTube Terms state that "Any claim or dispute between you and YouTube that arises in whole **or in part** [emphasis added] from the YouTube Website shall be decided exclusively by a court of competent jurisdiction located in San Mateo County, California". Therefore, the YouTube Terms are invalid and unlawful as they are overbroad. For if someone were to sue all the companies in the world and have one tiny claim against YouTube's "website", YouTube's Terms would state that the case must be filed in their forum.

Plaintiff objects to the filing of the Defendants' Motion to Transfer itself, as Plaintiff granted Mike Berta an extension to numerically Answer the Complaint. At first, Plaintiff did not want to grant the extension, knowing that it would just be used as a stall tactic (as it was), so he granted an extension under the agreement that the Complaint be Answered by the new deadline. Instead, Defendants have reassigned the case and concocted this Motion to Transfer, after being forewarned that the forum was proper and that the disputes do not arise out of any applicable

Terms of Use, and that the Terms were not agreed upon. Defendants do not mention this conversation in their Memorandum.

Viacom didn't sue YouTube in California and Viacom's dispute actually arose in part from use of the website, whereas Plaintiff's disputes arose in communications with the Defendants.

## REGARDING DEFENDANT'S REQUEST FOR ORAL ARGUMENT

Pursuant to Rule 7.1(D), Defendants request oral argument on its Motion to Dismiss. Plaintiff asserts that oral argument is unnecessary and will only cost the Court and the Plaintiff needless time, money, and aggravation over a simple motion that was turned into a lengthy dossier by the Defendants who haven't even alleged any proof of contract agreement or assent - the fundamental tenet of proving an agreement. Defendants issued a motion and supporting documents of well over 20 double-spaced pages (excluding the Complaint), and so the Plaintiff requests this Court to accept Plaintiff's motion which is a much shorter and a few over 20 double-spaced pages. With pretrial conference(s) coming up, Plaintiff would prefer to defer to that time and after to make physical appearances in Court over more complicated issues than what the Defendants have presented in this Motion to Transfer, namely: 'whether a blank copy of a modern-day YouTube sign up page is proof that Plaintiff entered into a contract years ago with Defendants to have all disputes settled in their forum on the opposite side of the country, even though they have the leading Boston lawfirm across the street from the Mass. forum' and also 'whether a bunch of case law on actual contracts is somehow applicable to an agreement that was never formed in reality." However, if it be the wish of this Honorable Court to hear oral argument on the motions, then the Plaintiff will happily appear in Court.

## OBJECTION TO DEFENDNATS' LOCAL RULE 7.1 CERTIFICATION

Defendants' counsel, James B. Conroy, certifies that Google's Californian counsel [Mike Berta] "conferred in good faith with the pro se plaintiff in an effort to resolve the issues raised in this motion." Of course, Mr. Conroy can't certify, as fact, what someone else told him. That's called hearsay. Therefore, the Defendants' Motion to Transfer is moot on these grounds as well.

## WHAT FORUM IS BEST FOR GOOGLE?

Honestly, Plaintiff believes, assuming both courts would be equally just, that Defendants is much better off in Massachusetts than in San Mateo County: for one and thus far, this *Donnelly et al* firm appears much more clever and fearsome than the *Wilson et al* firm. Plaintiff would most likely prefer opposing counsel to be from the *Wilson et al* firm than the *Donnelly et al* firm. This also goes to show that Google is attempting to move the forum, against the interests of justice and against their own interests, **just** to prejudice the Plaintiff's case and **just** to deprive him of his day in court.

## DEFENDANTS' PROOF OF AGREEMENT TO YOUTUBE TERMS OF USE

Like a mantra, it is repeated throughout Defendants' Memorandum and supporting declarations, in the form of unsubstantiated hearsay, that Plaintiff "agreed" to the Terms **because he did this completely separate thing**. For example, in Mike Berta's declaration, paragraph 4, Mike Berta states: *"[I] specifically informed Mr. Ligeri that the YouTube Terms of Use, to which he agreed by submitting material to YouTube, prohibited him from filing the attached Complaint in Massachusetts..."* Mike states that the Plaintiff agreed to the Terms because he submitted material to YouTube. First of all, it's hearsay. Mike has repeatedly told the Plaintiff in conversations that he knows very little to nothing about YouTube and now he's writing a declaration on the processes.

What Mike says is unsubstantiated. And it is incorrect. One can easily submit material to YouTube without agreeing to Terms; in fact, Plaintiff never agreed to any Terms while submitting material to YouTube's website. And further, Plaintiff has no disputes in his Complaint about the submission process.

In fact, Plaintiff is willing to demonstrate for this Court how he can submit a video to YouTube in a matter of seconds without ever agreeing to anything, without ever reading anything, and without ever seeing any Terms or notification of the existence of any Terms. And without ever assenting even electronically to any Terms. In fact, Plaintiff will even perform this operation in the court blindfolded.

Respectfully submitted,

Benjamin Ligeri,

pro se

Benjamin Ligeri
*(mailing address)*
39 Wheaton Ave.
Rehoboth, MA 02769
(401) 952-6661
GooTube@BenLigeri.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 14th, 2008, a true copy of the above was mailed to the US District Court on One Courthouse Way and to James P. Conroy on One Beacon Street. It was sent by Fed Ex to ensure timely delivery.

FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

2008 NOV 17 A 10: 54°

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| **BENJAMIN LIGERI** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | : |
| | : |
| **YOUTUBE, INC., et al.,** | : |
| | : |
| **Defendants.** | : |
| | : |

## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF PLAINTIFF'S RESPONSIVE MOTION TO DENY
## DEFENDANTS' MOTION TO DISMISS OR TRANSFER COMPLAINT

### X.    PLAINTIFF'S INTRODUCTION

Plaintiff Benjamin Ligeri ("Plaintiff") respectfully submits this Memorandum of Law in

support of Plaintiff's Responsive Motion to Deny Defendants' Motion to Dismiss or Transfer

Complaint (Defendants' motion hereinafter "Motion to Transfer").

Plaintiff objects to Defendants' Motion to Transfer for the following reasons:

1.    Said motion is overbroad and unduly burdensome, it cites dozens of cases

inapplicable to the core issue surrounding the motion iteslf, but which mostly serve as a rubber

stamp for Defendants' superfluous allegations unrelated to the core issue.

2.    Plaintiff doesn't have access to the legal resources that Defendants' counsel has

access to. This is important because Defendants can type in elements of superfluous arguments into

extremely expensive legal research software which uses state of the art algorithms to funnel a series

of cases to the Defendants in support of whatever legal concept, however inapplicable, that they decided to query. Almost no thought would go un-"supported" by this method. And in accordance with Plaintiff's forma pauperis proceeding, which was broadcasted to the prejudice of Plaintiff's case and with objection by Plaintiff, Plaintiff contends, with all due respect to the Court, that the Court should make the same algorithmic legal research software available to himself as well, and maybe even assign a few paralegals to him as well and/or an attorney(s), especially as this case gets further underway. Plaintiff would gladly repay these services plus interest on them if he is successful in a trial. Plaintiff is already thankful to the Court for its free services thus far.

3.    Defendants' Motion and accompanying documents is over the maximum 20 double-spaced pages allowed by the Federal Rules of Civil Procedure. As such, Plaintiff's motion is a few pages over as well.

Without waiving said objections, Plaintiff responds as follows:

## I.    [RESPONSE TO DEFENDANTS'] **INTRODUCTION**

In Defendants' Motion to Transfer, Defendants motion this court for a dismissal or transferral of the Complaint to San Mateo County, California, and they assert Rule 12(b)(6) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1404(a) for transferral/dismissal grounds. Although they assert those two very short and specific rules/laws, they argue other rules and laws in their Memorandum, and they also argue a set of electronic terms of use, the YouTube Terms of Use (hereinafter "YouTube Terms") that Plaintiff never agreed to. Without waiving said objection to Defendants' invocation of further law in their memorandum than the law they were very narrow and specific about in their Motion to Transfer, Plaintiff does respond to those additional legal grounds asserted in Defendants' Memorandum as well.

In their Memorandum Introduction, Defendants rely on a "fact" that the court record would deem indubitably false. Said "fact", quoting Defendants' Memorandum, is:

> *"The Complaint's allegations all arise out of Ligeri's efforts to place videos on*
> *YouTube's website, YouTube.com."*

Well, as can be clearly evidenced by looking over the Complaint, the Complaint's allegations have nothing, or next to nothing, to do with any efforts to place videos on YouTube's website or in the operation of the YouTube website itself. In fact, and pretending for a moment that defendant YouTube is the sole defendant, the claims against YouTube arise mostly out of agreements entered into between the Plaintiff and the Defendants (via email and through unilateral contracts) and broken and/or dishonored by the Defendants. These claims do not arise out of using the YouTube website, rather, they arise out of additional agreements (which are quite likely the only binding agreements) between the Plaintiff and the Defendants as well as unilateral agreements offered in the media, which is, in essence, the only way the Defendants communicate and likewise enters into true, binding contracts with its account holders and prospective account holders.

Additionally, in Defendants' Memorandum Introduction and later on in their Memorandum as well, Defendants assert that the Plaintiff was informed, prior to filing the Complaint, that this Court was the improper forum for this case. Defendants contradict this assertion later in their own Memoradum when they state that Plaintiff was informed on August 6th and that the Complaint was filed on August 7th. If the Complaint was filed on August 7th, it had to be placed in the mail to the Court prior to August 6th (or prior to any conversation on August 6th). Plaintiff doesn't understand the electronic process. He tried it once in the past and couldn't get it to work. Therefore, Plaintiff did not file the Complaint after Defendants' counsels' warning of improper forum, but

rather, Plaintiff did not withdraw the case after said warning. That is true, Plaintiff did not withdraw the case, as he disagrees with Defendants' counsels' assertion of the proper forum, and that disagreement was made very clear to Defendants' counsel, Mike Berta, when Plaintiff argued that the Complaint doesn't arise out of the YouTube Terms, that Plaintiff did not agree to said Terms, and that Plaintiff disputes the validity of said Terms.

Counsel infers that there was some type of agreement had between the parties and that the case should be transferred because of that agreement, however, the Plaintiff and Mike Berta would both disagree that an agreement was had between the parties to file in the Defendants' Californian forum, as Plaintiff could not proceed in such a forum. Additionally, Mike Berta's declaration does not state that the Plaintiff agreed to the forum, just that Mike Berta informed him of the forum, and Plaintiff does not dispute that Mike Berta informed him of this Californian forum, but Mike Berta isn't the judge, he's opposing counsel, and opposing counsel isn't the type of counsel that Plaintiff takes advice from.

## II.  [RESPONSE TO DEFENDANTS'] **BACKGROUND FACTS**

### A.  **The Parties**

Defendants state that YouTube "Account holders like [Plaintiff] Ligeri create and upload videos to YouTube.com, free of charge." Fact: It is not free of charge to create and upload videos to YouTube.com. It costs a lot of money, not to mention an inordinate amount of time, to create and upload videos.

Counsel cites a declaration by Lance Kavanaugh (who identified himself only as an "employee of defendant Google") as "evidence" that one must first agree to the YouTube Terms prior to opening an account on YouTube. This is not true. And this can be verified by going to

YouTube.com/signup and opening an account. One need only fill in "a" name and email and other such info. and mouse click a digital checkmark box to create an account. And that's the procedure today, not two years ago when Plaintiff signed up. Yes, currently, the checkmark box says to the right "I agree to the Terms of Use and Privacy Policy." However, checkmarking a box next to an "I agree" statement isn't an agreement. Further, one need not even read the "I agree" statement to the right of the box in order to checkmark the box, and even further, one definitely need not open the Terms, nor need to read them in order to digitally convey agreement to an internet database. This contradicts Defendants' cited case law where parties officially agreed to a set of Terms.

Further, agreement to something that you haven't read and that isn't even required to be opened or looked at prior to creating an account does not signify agreement to that which you haven't read. Many sites (not including YouTube) require that you read the Terms prior to proceeding with registration. Of course no one can know if you are actually reading them, so they put in many safeguards to ensure reading, such as mandatory opening of the terms, or mandatory scrolling down over each set of terms. YouTube doesn't even require a click to be made on the terms to pretend they were opened before allowing you to create an account. And such a click verification would be very easy for Defendants to employ. And until they do, they're nowhere, nowhere close to having a binding agreement. Plaintiff further objects to the declaration of the un-voir dired and unidentified declarant known as Lance Kavanaugh.

Now further, Defendants have not even submitted any proof of agreement to the Terms, whether textually or digitally, in their Motion to Transfer, and on solely this ground alone, their argument on behalf of the binding nature of the Terms is completely moot and hence is their Motion to Transfer which relies on agreement to those Terms.

Even further, Defendants have not even alleged that this checkmark box was mandatory at the time of Plaintiff's opening of an account on YouTube.com. Exhibit C attached to Kavanaugh's Declaration is a copy of the current sign up form on YouTube.com/signup. This form is much different from the one that Plaintiff used to originally sign up. If Plaintiff recalls correctly, he didn't have to checkmark a box that signified agreement to any Terms when he signed up, though he can no longer access this outdated page. YouTube could've easily provided this older page in their exhibits as they provided a copy of their Terms of Use from 2005. This exhibit C is therefore moot and the Defendants have failed to even assert any proof that Plaintiff agreed to their Terms -- except that they "state" that one must checkmark a box to continue. This isn't proof. It is general suspicion and hearsay potentiality. Defendants have offered no proof that Plaintiff checkmarked this box, no database report showing the checkmark, etc. When Plaintiff reviews an account holder's database profile on his website [www.BetterStream.com] it shows him whether or not that account holder has agreed to the BetterStream Terms. Agreement to the BetterStream Terms is not mandatory, because a system for agreement has not yet been devised. Neither has one been devised on YouTube.com. Further, someone could've opened Plaintiff's account and Defendants allege nothing that would contradict this notion. What matters most in this case and in these motions is YouTube's practice and unilateral promulgations, not some backend policy written to the contrary of everything YouTube asserts publicly (more on that below).

Furthermore, even reading the YouTube Terms doesn't signify legal agreement to them. A non-lawyer cannot be held to agree to things that he doesn't understand or that a reasonable person would not understand. In fact, it is illegal for Defendants to even request agreement to the YouTube Terms, as a layman is not legally able to agree to said Terms. That being said,

Plaintiff did not read the YouTube Terms prior to creating an account, nor did he agree to them. And Defendants have provided no proof of agreement to the contrary.

All reality contradicts YouTube's consistent "cyber arguments". Defendants go on to argue the necessity of a jurisdiction defined to the county of their corporate headquarters for handling all disputes with their ever-so nationally-dealing company. Let it be known to this Court, that this is the same poor "free service" that sold for over one and a half billion dollars to a company that earns about five billion dollars every few months from their "free services" as well. I doubt any Court would fall for this "hardship" argument, but just in case, Plaintiff states that YouTube's "service" to its account holders is free in the same way that Wal-Mart's "service" to its employees is free. Meaning, it's free to work for free to the enrichment of the Defendants.

If the Court were to deem that Plaintiff agreed to the YouTube Terms, then these Terms were agreed to in the state of Massachusetts and all work done on behalf of YouTube and Google was done in the state of Massachusetts and the Defendants are therefore properly being sued in the state of Massachusetts -- despite having a clause at the very end of their Terms (which are more than thrice the length of the Declaration of Independence) that states your forum is mandated 3,000 miles away from where you're entering into this agreement. An issue on point with the issue of this paragraph would be 'whether a Massachusetts Wal-Mart could hire a Massachusetts employee and force all disputes to be settled at Wal-Mart headquarters in Arizona? If that is legal, than that might prove that the YouTube Terms forum clause, if read and agreed to (which it wasn't) are also legal. Further, a company that does 5 billion a quarter in international business should have more than one forum. Accordingly, it is unjust and unlawful for the Defendants to even attempt to ascertain agreement to one forum against a company of this earth-shaking stature.

### C.       The YouTube Partner Program

Whether true or false, Defendants arguments in this section of their Memorandum have absolutely no applicability to their Motion to Transfer, and therefore a rebuttal is omitted.

### D.       Procedural History

Whether true or false, Defendants arguments in this section of their Memorandum have absolutely no applicability to their Motion to Transfer, and therefore a rebuttal is omitted. This issue that Defendants keep arguing, that Plaintiff was informed that he should file in California by opposing counsel and how he ignored opposing counsel is preachy, parental, irrelevant and false, as already illustrated herein.

## III.    [RESPONSE TO DEFENDANTS'] **ARGUMENT**

In this section of their Memorandum, Defendants mangle the wording of the facts that they have thus far established and built declarations upon. They now refer to the YouTube Terms as "contractually-mandated" when this wasn't even alleged and when the Terms don't even meet one facet of a legally binding contract, accept maybe the Offer. A loose argument can be made that the Terms establish an Offer. But the Defendants haven't even alleged any proof of acceptance of that Offer, nor consideration, nor what that Offer might even be. They argue that any dispute stemming from Plaintiff's use of YouTube's website "be decided exclusively by a court of competent jurisdiction located in San Mateo County, California." However, even if true, even if these Terms were agreed upon, were not overbroad, did not violate *Sylva*, did not violate due process (which they due) and were in fact able to dictate the forum, they still wouldn't be applicable, as the dispute arises from private agreements (had in writing) between Plaintiff and Defendants and unilateral contracts put forth by the Defendants and accepted by the Plaintiff -- these said disputes did not

stem from using the website interface. Plaintiff has used other youtube-similar sites such as DailyMotion.com, Blip.tv, and even Google Video (video.google.com) and no disputes stemmed from the use of their website interface. Likewise, disputes with defendant YouTube, LLC didn't stem from Plaintiff's use of the site, they stemmed from the breach of YouTube's agreements made in written email correspondence with the Plaintiff, in accepted unilateral contracts, in media promulgations, and even in promulgations made on their website -- and, for the latter, Plaintiff entered into an agreement at YouTube.com/Partner (a copy of which is Defendants' Exhibit D) which the Defendants have not honored -- this is a real agreement. A unilateral agreement that you accept by clicking Apply Now. After you click Apply Now, you are taken to an application page and after you fill the application out, you can click "Review Application" which takes you to a page showing you what you filled out. Then at the bottom you can click "Submit Application", then you are done. Nowhere in this process does the YouTube website ask you to agree to any terms nor are there any terms appearing on any of the pages in this application process.

For clarity, such a dispute stemming from use of the website and invoking the terms might be a dispute of the following variety: say you upload a video to YouTube and their server accidentally destroys it, and now, since it was a website issue, you have to use the forum dictated by their Terms to recover your material. Plaintiff doesn't have a dispute like that, a dispute with the website's function. However, Defendants argue in their Memorandum that such allegations as "unpaid shares, unpaid wages, fraud, unjust enrichment" (citing the Memorandum) and others are analogous to disputes with a website's malfunctions. Websites, corporations, and other artificial entities can fail to pay someone, due to glitch or inadvertance. Plaintiff doesn't allege in the Complaint that a computer or website malfunctioned or inadvertently neglected to pay the Plaintiff,

but rather that <u>real people intentionally failed to make payment to the Plaintiff</u>, intentionally broke agreements or entered into agreements with no intention of fulfilling them.

Further, Defendants even admit in their Memorandum that "[Plaintiff] Ligeri has not expressly pleaded a breach of contract based on the [YouTube Terms] agreement itself."

Further, Defendants cite *Silva* on how unreasonability is a bar to forum-selection clause. But Silva's forum clause was read and understood and agreed to by both parties, a vital set of facts which <u>YouTube doesn't have nor even allege in their defense of their forum clause</u>. In short, Defendants are using case law where two parties agreed to a forum clause, but in this case, Plaintiff didnt' agree to a forum clause.

On page 7, Defendants argue *Reder Enters., Inc,* 490 F.Supp.2d at 116 *quoting Doe v. Seacamp Ass'n, Inc. 276* F.Supp.2d 222, 227 (D.Mass 2003) in that any claims arising out of a forum selection clause additionally cover any tort claims that "grow" out of the contractual relationship. Well, for one, and not to belabor the point, there was no contractual relationship as to forum selection that was agreed upon by Plaintiff and the Defendants, and the dispute didn't arise from technical website issues, and did not "grow" from such issues either. The disputes that Plaintiff has grew separately in latter and isolated incidences.

To reference Defendants' citation of *Silva* once again, assuming that case had any relevance to this case, Plaintiff asserts that any forum selection clauses mandating the forum to San Mateo County were not agreeed upon and therefore do not invoke *Silva*. If *Silva* was invoked or if Defendants' cited US Supreme Court case *M/S Bremen* was invoked (which Plaintiff contends neither are), Plaintiff's argument of unreasonability and deprivation of his "day in Court" would include, in addition to everything mentioned herein his memorandum, the concepts described in the

following paragraphs and also in Plaintiff's "Unconscionable Nature of Transferring the Case" section below.

AT THE END OF PAGE 9 and at the BEGINNING OF PAGE 10 of Defendants' Memorandum, Defendants assert that Plaintiff should be held to the Agreement (which doesn't exist and which Defendants have not even alleged acceptance to, but have rather shown merely a chain of events that could possibly, though highly unlikely, lead to potential acceptance) because Plaintiff chose to use YouTube.com to host and display his content, rather than other like websites. Well, as Plaintiff alleges in the Complaint and herein this memorandum, he chose several websites to host and display his content, but is suing YouTube because they broke unilateral contracts and other agreements made in writing, not because they broke the inapplicable YouTube Terms.

Defendants go on to argue that "litigation in the agreed-upon forum would not deprive [Plaintiff] Ligeri of his day in court." Well, assuming, for the sake of Plaintiff's counter argument, that the forum in California was agreed upon, which it was not, Plaintiff would likely be deprived of his day in court, as he can't afford to appear 3,000 miles away from home for Court. On the other hand, Google's lawyers are one mile from the Mass. forum and are certainly not going to be deprived of their day in Court with the "leading litigation boutique" of Boston on their side.

In response to Defendants' cited 1st Circuit case *In re Mercurio*, and again, making the absurd assumption that the YouTube Terms were agreed upon by Plaintiff and are applicable, Plaintiff's argument to escape such contractual forum mandates is nothing short of overwhelming: Plaintiff's argument in this memorandum clearly meets the definition of Defendants' cited passage where, in order to escape a contracted forum, Plaintiff would have to show that trial in the contractual forum (alleged to be in California) will be so gravely difficult and inconvenient that he

will for all practical purposes be "deprived of his day in Court". In addition to the obvious argument of Plaintiff's inability to travel to and litigate in California for lack of finances and relocation abilities, Plaintiff also argues that this forum resides in Google's dominion. These are Courts where Google "lives" and infects them with cyber terminology that they adopt for fear of being ignorant of the local Silicon Valley trends. San Mateo County could already be called Google County. And to add to that, YouTube is also in San Mateo. This company can't wreak havoc all across the world, have offices and lawfirms working for them nationwide on every corner, have websites and employees in every state, and then mandate all litigation to be had in the little town cornered by Google's and YouTube's massive headquarters. Further, it's a falsehood that Google's principle place of business is any one location on earth, it's everywhere on earth and mainly on the internet. Google also owns Google Earth.

It's important to note that the procedural law wasn't built around companies of Google's size, and Google is pleading small town litigation burden principles but are a governmental-sized company operating thoroughly internationally, not modestly internationally. Further, what Google and YouTube get away with on the internet would never be tolerated from a dry land-operating corporation. They get away with these things by attempting to outsmart land-based thinkers.

The Defendants also cite a Washington District Court case *(Bowen v. YouTube),* which is inapplicable and holds no legal authority, where the Plaintiff in that case agreed with YouTube's motion to transfer and volunteered for a venue change. She basically requested that the Court honor YouTube's motion. When you voluntarily dismiss a case, it doesn't set precedent.

Further, Plaintiff's forum choice satisfies the "minimum contacts" requirement of a more

applicable case cited in *Bowen* -- but not cited by the Defendants (*Pebble Beach Co. v. Caddy*, 453

F.3d 1151 (9th Cir.2006).04.

## **THE INAPPLICABILITY OF THE YOUTUBE TERMS EVEN IF AGREED TO**

If ever there was a contract infinitely more imbalanced than the basic definition of what an adhesion

contract is (an unnegotiable contract written mainly in the favor of the contract issuer), the

YouTube Terms of Use is that "contract". However, the YouTube Terms could not ever be

considered a contract--or to have any validity--for the following reasons:

1.      No reasonable person reads the YouTube Terms.

Plaintiff would be confident that the Defendants would agree with him on the statement that

few to no people read the YouTube Terms, that is to say, 99% of the people who sign up at

YouTube probably don't even click the link to read them and probably don't even know what box

they just checkmarked. Even if a few percent clicked the link, it could be stated, without any

hesitation, by both the Plaintiff and the Defendants, that 99.9% of people don't read the terms.

Plaintiff would bet it all on the fact that that statistic is probably closer to 99.999%+ of people who

don't read the YouTube Terms. Effectually, no one reads them and few see them. Further,

Defendants' knowledge of the fact that scarcely no one reads the terms or sees them shows that the

Defendants are proceeding in bad faith to enforce an agreement that they know to be invalid. And

they make no effort to make their Terms more accessible or, god forbid, inviting. Because:

2.      Defendants don't want users to read the YouTube Terms.

Defendants go out of their way to make  it so people signing up for a YouTube account do not read

nor agree to their YouTube Terms. They do not state the importance of reading them, the necessity

or reasoning behind them, they don't enforce that they are looked at or even clicked, nevermind scrolled through sentence by sentence as many sites (including Google) do. They're also extra long and unorganized and hard to read. The clause on forums is the very last clause, one giant block of text under the heading GENERAL. Not the heading LEGAL, DISPUTE RESOLUTION, or COURTS, but rather the heading GENERAL. It's not general, it's very specific, and very unlawful.

3.    The YouTube Terms offer no consideration.

And the YouTube Terms are unlawful due to overbreadth and overreaching and for attempting to write away Constitutional guarantees such as due process. Additionally, the Terms are completely one sided in YouTube's favor. The Terms grant YouTube every right imaginable to use your content while you retain full responsibility for anything that YouTube uses of yours. The Terms state that YouTube will not be liable to you for the same things that you would be liable to YouTube for. And anything that YouTube does wrong is your problem and anything that you do that YouTube doesn't like is also your problem. What did YouTube offer in exchange for two years of Plaintiff's work for them? Nothing in their Terms. They make [usually unilateral] offers outside of their Terms, because they know they won't keep getting people's hard work for free if they don't. If people did read their Terms, the YouTube site would decline. If people read the Terms, the YouTube site wouldn't be what it is today. Therefore, YouTube gains a benefit from people not reading or agreeing to the Terms -- and attempts to exact another benefit from those same people by stating that they did read the Terms. This is contrary to all reason and flies in the face of basic judicial tenets.

Further, YouTube attempts to nullify all outside agreements **(which they promulgate)** from within their Terms **(which they hide)**, (con't)

As alleged in the Complaint, one of YouTube's many schemes is to promulgate a series of

wonderful things the YouTube account holder can enjoy upon being a member, then writes all of

those wonderful things out in the YouTube Terms which no one reads. That way, when anyone is

wronged by YouTube and whenever YouTube goes back on their promises and agreements, they

then dust off this unread digital set of contradictory legal jargon which flies in the face of

everything they state in PROMOTED sources and other true legal and binding agreements and via

email. Yes, the attempts of the Defendants are both unconscionable and moderately comical.

    4.     The YouTube Terms do not meet the contractual requirements of the Uniform

Commercial Code.

    5.     The YouTube Terms are at polar odds with YouTube the company.

For example, YouTube the company, the YouTube in the media, and the YouTube that is a

defendant in this action, that YouTube promotes "Broadcast Yourself" and "Earn Revenue" and

"Be Discovered" in exchange for the person's return consideration of joining and donating content,

free of charge, to YouTube's online Wal-Mart of video. YouTube the company does not promote

the YouTube Terms. The YouTube Terms couldn't be any more hidden than they are. All the main

facets of the YouTube Terms are contradicted by the Defendants. For example, the YouTube

Terms state: "You agree not to solicit, for commercial purposes, any users of the Website with

respect to their User Submissions." Tell that to the "YouTube Community" vying to be contacted

by a media corp. that wishes to aire their content or hire them. How can you "Be Discovered" on a

site that doesn't allow commercial solicitations? You can't. Yet YouTube didn't sue the companies

that contacted and hired some of the big YouTube stars. They promulgated the idea and wrote the

possibility of it out in their Terms.

Now speaking purely in the "digital world", the world in which GooTube created its own set of laws (hereinafter "GooTube's Cyber Laws") many websites are pushing what is usually called a "Terms of Use" or a "Terms of Service", which almost always appears as a check box that you must check in order to activate your account. Ordinarily the terms are not revealed or shown, there is usually a link to go view them. Most legal scholars, and all layman, would not be able to agree to most of these sets of terms without numerous clarifications of all sorts. The terms cleverly attempt to define the entire relationship between the website accessor and the website owner in total favor of the website owner. These terms often grant no consideration to the website user, unless the right to work for free on behalf of the website and to add to the profit of the website's company is deemed consideration.

## WHAT DISPUTES MIGHT INVOKE THE UN-AGREED TO YOUTUBE TERMS

Plaintiff further asserts that even if the YouTube Terms are deemed valid by this Court and also, even if this Court deems Plaintiff to have agreed to these Terms, these Terms are still invalid on point -- as Plaintiff asserts that it would be unlawful, unconstitutional, and grossly unfair if a company with international dominance of the entire internet could mandate all litigants to the small county which is primarily occupied by their corporate infrastructure. Just the thought of that is lunacy.

Further, the YouTube Terms state that "Any claim or dispute between you and YouTube that arises in whole or in part from the YouTube **WEBSITE** [emphasis added] shall be decided exclusively by a court of competent jurisdiction located in San Mateo County, California". Therefore, even if the terms were valid, were applicable and were agreed to (none of which is the case), the Terms still only cover litigation arising "from the YouTube **website**". Plaintiff's dispute

is not with the website, a collection of cyber code giving way to an interactive platform that can often err, but rather, Plaintiff's dispute is with the Defendants and the true agreements they entered into with the Plaintiff.

## THE UNCONSCIONABLE NATURE OF TRANSFERRING THE CASE

According to Nielsen, Google has its hooks in 65% of the internet.

Almost all, if not all, profit roads lead back to Google. Google has made promises and has entered into unilateral contracts to cut media creators into a share of the revenue pool they create, yet they have broken those agreements. Unilateral contracts which are the only thing an independent creator can legitimately go on: a promise from this covert, communication-free conglomerate that effectually owns the internet -- the internet being a place where independents could once succeed on their own merit. GooTube's monopoly couldn't be any more prominent, any more lucid, any more unconscionable, any more immoral.

Google is referred to as the Coke with no Pepsi. And Coke and Pepsi are together an unfair monopoly over the other drinks. And this Google doesn't even have a competitor, especially in the video world. They control the number one online media destination and they control the number one search engine used to find media. They control the monetization of lesser sites too. They got it all, and now they want the case decided on their corporate compound. Plaintiff asserts that that is unfair and highly prejudicial to a case already prejudiced against Plaintiff.

Instead of using the word "search" to define an internet search, it is now common to call searching "Googling". With that being said, if you *Google* the term "Google" on Google.com, you get over 2.7 billion matches. If you *Google* the term "sex", "business", "movies", and "entertainment, you get less matches for all of those terms combined.

Further, Google has hired the self-proclaimed "leading litigation boutique" of Boston to argue their case in this forum. A collection of prestigious lawyers operating **one mile** from the Court are currently arguing Defendants' Motion to Transfer. Plaintiff is 50 times further from this Mass. US District Court than Google is and now Google is asking this Court, in the interests of "justice", to order the broke, forma pauperis, and pro se Plaintiff to move to Google Land on the opposite side of the country to argue his case. If that isn't the mother of all evil intent, what is. And if this Boston firm is on retainer, then that's just treason. Defendants' Motion to Transfer is analogous to the Plaintiff asking this Court to move the case into his bedroom and let Plaintiff's teddy bear be the trier of fact, with Plaintiff as the Jury Foreman.

It's clearly a travesty of justice when two companies (the Defendants) can all but completely dominate the digital world and require at each of their gateways (into this once-free digital world that the Defendants have commandeered for their sole profits) a non-negotiable set of legalese-laden terms that are written wholly in their favor, which cover "every possible" legal scenario that could happen in the future, define the latitude and longtitude of the courts you must use to challenge them, and which must be "agreed upon" (not to be mistaken with actually seen or agreed upon in reality) before proceeding into the digital world that they've usurped from everyone.

## IV.    CONCLUSION

The YouTube Terms is a 26,000-character document in big block paragraphs that attempts to secure every benefit possible for YouTube and any suffering possible for the user agreeing to this next generation cyber adhesion contract with no consideration offered and no acceptance required and truly no offer being made. It is a set of legalese that is unconscionable, has no legal standing, is void for vagueness and overbreadth and clause hiding. It is a set of Terms that possibly

no one on the outside of YouTube has read. But likely 99.99% of YouTube users definitely haven't read. And YouTube's databases record this statistic that scarcely no one reads the YouTube Terms, so YouTube has knowledge of this fact and does nothing to remedy the situation (nor do they alert the Court), whereas other companies force prospective account holders to <u>click</u> the Terms, to <u>open</u> them, and to <u>scroll</u> down line by line and <u>review</u> them before they will let you <u>open</u> an account. On YouTube, you can easily accidentally click the box that YouTube claims signifies your agreement to this 26,000-character document <u>without even knowing what you clicked</u>. There's no safeguards to ensure the Terms are read. YouTube prefers the Terms not being read, and with good reason, they contradict YouTube.

YouTube bathes account holders in monetary and fame-based promulgations and media campaign promises made in bad faith, and whenever held to their promises and promulgations, YouTube attempts to whitewash the courts with this set of Terms that they try to make the courts believe everyone agrees to, when no one agrees to them.

And even if people did read them, they still couldn't agree to them without a lawyer present (and YouTube doesn't suggest that you hire a lawyer to help you understand their Terms which is mandatory) because said Terms are written in legalese that would need to be briefed by an attorney before the attorney himself could attempt to understand them -- briefing statutes and other run on legalese is taught in law school, or at least in pre law -- yet YouTube doesn't have a link showing prospective account holders how to brief or better understand their Terms. Some websites have an email for clarification requests. YouTube does what they think is the absolute minimum. But in fact, it's much, much, much less than the minimum. It's effectually nothing. It's less than nothing.

Plaintiff did not read the YouTube Terms nor agree to them at the time of sign up.

**Defendants did not prove nor even allege anything to the contrary.** It's quite possible, and YouTube's Motion to Transfer and supporting documentation lend credence to the idea that one didn't even need to checkmark agreement to Terms prior to signing up at the time when the Plaintiff signed up about two years back. YouTube is asking the Court to deem that Plaintiff agreed to these Terms two years ago when signing up for an account, **based on** a picture of a present-day and blank sign up form. Not Plaintiff's sign up form or database entry, but a blank picture of today's 'YouTube.com/signup' page. That's like offering your cat as evidence that your dog ate a rat. It's ludicrous, yet Google gets away with it because no one argues back and "case law" is often formed on Google's word only and Courts are tempted to agree with anything Google says because Google owns Google Earth. It's all fear and intimidation tactics but the Plaintiff is confident that the Massachusetts US District Court will see Defendants' scheme. Plaintiff will close with a quote from Frederick Douglass inscripted on the walls of this Court (and then he has to run out to catch Fed Ex): "Where justice is denied, and any one class is made to feel that society is an organized conspiracy to oppress, rob, and degrade them, neither persons nor property will be safe." Is Google a part of our society or is Google buying society? I respect the power of Google's cleverness, but I don't admire its application. I truly hope they turn over a new leaf.

//

//

Dated this 14th day of November, 2008.

Benjamin Ligeri
39 Wheaton Ave.
Rehoboth, MA 02769
T: (401) 952-6661
E: GooTube@BenLigeri.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 14th, 2008, a true copy of the above was mailed to the US District Court on One Courthouse Way and to James P. Conroy on One Beacon Street. It was sent by Fed Ex to ensure timely delivery. Plaintiff doesn't understand Mr. Conroy's certification and therefore notes objection to it. Though Plaintiff did receive Defendants' Motion To Transfer.