1

                       UNITED STATES DISTRICT COURT
                        DISTRICT OF MASSACHUSETTS


     BENJAMIN LIGERI,                      )
                        Plaintiff,         )
                                           )
                                           )
     vs.                                   ) Docket No:
                                           ) 1:08-cv-11394-DPW
                                           )
     YOUTUBE, INC., ET AL                  )
                        Defendants.        )


     BEFORE:   THE HONORABLE DOUGLAS P. WOODLOCK


                            MOTION HEARING


             John Joseph Moakley United States Courthouse
                           Courtroom No. 1
                          One Courthouse Way
                           Boston, MA 02210
                      Tuesday, December 30, 2008
                              2:00 p.m.



                     Brenda K. Hancock, RMR, CRR
                        Official Court Reporter
             John Joseph Moakley United States Courthouse
                          One Courthouse Way
                           Boston, MA 02210
                            (617)439-3214
              Mechanical Steno - Transcript by Computer

```
 1   APPEARANCES:

 2
     For the Plaintiff:
 3
          BENJAMIN LIGERI, PRO SE
 4        39 Wheaton Avenue
          Rehoboth, MA 02769
 5

 6   For the Defendants:

 7        WILSON, SONSINI, GOODRICH & ROSATI PC
          By:  Michael A. Berta, Esq.
 8        One Market Street
          Spear Tower, Suite 3300
 9        San Francisco, CA 94105

10           - and -

11        DONNELLY, CONROY & GELHAAR, LLP
          By James B. Conroy, Esq.
12        One Beacon Street
          33rd Floor
13        Boston, MA 02108

14

15

16

17

18

19

20

21

22

23

24

25
```

1    (The following proceedings were held in open court
2    before the Honorable Douglas P. Woodlock, United States
3    District Court Judge, United States District Court, District of
4    Massachusetts, at the John J. Moakley United States Courthouse,
5    One Courthouse Way, Courtroom 1, Boston, Massachusetts, on
6    Tuesday, December 30, 2008):
7         THE DEPUTY CLERK:  All rise.
8    (The Honorable Court entered the courtroom at 2:00 p.m.)
9         THE DEPUTY CLERK:  This Honorable Court is now in
10   session.  You may be seated.  Calling the case of Civil Action
11   08-11394, *Benjamin Ligeri vs. YouTube Inc. et al.*
12        THE COURT:  Well, Mr. Ligeri --
13        MR. LIGERI:  Yes, your Honor.
14        THE COURT:  -- after reading the reply, do you have
15   any -- or do you make the contention that you didn't click on
16   the "Agree"?
17        MR. LIGERI:  Right.
18        THE COURT:  You do make that contention?
19        MR. LIGERI:  Yes, I do, your Honor.
20        THE COURT:  What's the basis for saying that you
21   didn't click it?
22        MR. LIGERI:  Well, there isn't one, and the code shows
23   that -- and I can hand out a segment of that exhibit, Exhibit
24   A.
25        THE COURT:  All right.

1          MR. LIGERI:  I clipped the relevant portion.
2          THE COURT:  All right.
3          MR. LIGERI:  Do I hand it to you?
4    (Document handed to the Deputy Clerk by Mr. Ligeri)
5          MR. LIGERI:  As you can see, it says "input type =
6    checkbox," about the sixth line down.
7          THE COURT:  Mm-hmm.
8          MR. LIGERI:  That's for the weekly Tube newsletter,
9    and it says "CHECKED" in caps.  That means the value starts
10   checked, and then you can uncheck it to unsubscribe.
11         THE COURT:  Mm-hmm.
12         MR. LIGERI:  If you go down further, you'll see "I
13   certify I'm over 13" and "I agree to the terms of use."
14   There's no checkbox there, there's no requirement to sign that,
15   there is no requirement to agree to that, to even notice it.
16         THE COURT:  Mm-hmm.
17         MR. LIGERI:  When you sign up for -- some people sign
18   up --
19         THE COURT:  Okay.  Let me be sure I've got this
20   straight between the parties.
21         So, what's the YouTube response to that?
22         MR. BERTA:  I'm sorry, your Honor.  The YouTube
23   response to that is, the reason that we put in the prior pages
24   is they are slightly different from the current page.  The
25   current page is attached --

1       THE COURT: No. But what Mr. Ligeri tells me is he
2   signed up for the weekly Tube email, I guess.
3       MR. LIGERI: Yes.
4       THE COURT: But he didn't sign up for anything else.
5   They're just a list of things here.
6       MR. BERTA: So, what this page looks like is, you have
7   I agree -- "I certify I'm over 13 years old," "I agree to the
8   terms of the use," and there is a link to the terms of use and
9   the privacy policy, and there is a link to the privacy policy.
10      THE COURT: Right.
11      MR. BERTA: Below those two statements, then you take
12  the action to sign up for the account, and, so, by signing
13  up --
14      THE COURT: How do you do that? I just want to
15  understand fully. I've got Mr. Kavanaugh's reply declaration,
16  I've got the attachment, which, I guess is, well, both Exhibit
17  A and Exhibit B to that.
18      Now, where do I see that someone has taken some sort
19  of affirmative act that acknowledges acceptance of the terms
20  and the privacy policy?
21      MR. BERTA: By clicking on the signup button, your
22  Honor.
23      THE COURT: Well, the signup button looks likes what?
24  What does it look like?
25      MR. BERTA: It's to some extent -- and let me just

1   explain very briefly, if I could.
2            THE COURT:  Sure.
3            MR. BERTA:  The reason that they are attached as code
4   and not as physical representations is because the declarant,
5   who's a software engineer, couldn't say with 100 percent
6   certainty exactly how the spacing would look like in the pages
7   represented today.  So, I understand that the code itself is a
8   little harder to handle than a representation, but he couldn't
9   swear as to exactly what the representation looked like.
10  However, what he says and what is generally -- which you can
11  see by looking at the opening Kavanaugh declaration, is that
12  exhibit -- if I could just explain it colloquially, if you look
13  at Exhibit C to the opening Kavanaugh declaration --
14           THE COURT:  Okay.  Hold on.  Let me just get it out.
15           MR. LIGERI:  It's the opening motions?
16           MR. BERTA:  Yes.
17           THE COURT:  Exhibit C, is it?
18           MR. BERTA:  Yes, your Honor.
19           THE COURT:  Okay.  Yup.
20           MR. BERTA:  So, that's the account creation page.
21           THE COURT:  The current account creation page, not the
22  one that was in use in 2006 and 2007; is that right?
23           MR. BERTA:  That's correct.  I would just briefly note
24  that the plaintiff has created accounts beyond those ones in
25  2006 and 2007, but that's --

1       THE COURT:  Those are the ones you're relying on.
2       MR. BERTA:  That's right.
3       THE COURT:  Mm-hmm.
4       MR. BERTA:  And, so, the difference between the
5  exhibits in the reply declaration and this is, at the bottom,
6  roughly speaking, instead of the two checkboxes of "Let others
7  on my" -- "Let others find my channel on YouTube, if they have
8  my email address" and check "I agree to the terms of use and
9  privacy policy" --
10      THE COURT:  Right.
11      MR. BERTA:  -- there's a line and a hyphen that says
12 "I'm over 13," a line and a hyphen that says "I agree to the
13 terms of use, and then below then you choose to create your
14 account based on what is said there.  So, the action is the
15 clicking to create my account button, and, so --
16      THE COURT:  Now, how do I know that on the basis of
17 the materials that I have here from Mr. Kavanaugh?
18      MR. BERTA:  So, what Mr. Kavanaugh states, your Honor,
19 is, first of all, with the code itself, which you can -- in the
20 document that was handed up by plaintiff, it says those two
21 things.  It says, dash, "I certify I'm over 13 years old,"
22 dash, "I agree to the" -- and that is a link to the terms of
23 use and privacy policy --
24      THE COURT:  Right.
25      MR. BERTA:  -- same as it is in the current signup

1  page, and then below that, the actions there were SubmitDiv and
2  the input name, action signup.  That's the signup button that
3  you push right below what you have certified to and what you
4  have agreed to.
5      And in the reply declaration of Mr. Kavanaugh, he
6  states that -- essentially that, that the terms of use are
7  linked to from the phrase "Terms of use" on the account
8  creation page, and it requires you to, quote, and that's what
9  is quoted, "Agree to the terms of use and privacy policy" in
10 order to create the YouTube account.  So, when you've created
11 your YouTube account, you've agreed to that statement that is
12 in what plaintiff handed out, the "I agree to the terms of use
13 and privacy policy."
14      THE COURT:  Mm-hmm.
15      MR. BERTA:  And, so, just so your Honor is aware, it's
16 not just there, as explained in the opening declaration, that
17 the terms of use show up.  As the plaintiff acknowledges, he
18 submitted over a thousand videos to YouTube, and each and every
19 time you make a submission of a video to YouTube, it says that
20 you agree that these apply.
21      THE COURT:  But I can only deal with the evidence I
22 have in front of me.
23      MR. BERTA:  Well, but that's in -- that is in the --
24 that's in the complaint, and it's also in the Kavanaugh opening
25 declaration, that every time you --

1  THE COURT: But, you see, the dispute that Mr. Ligeri
2  has raised has to do with precisely what these things said and
3  what he was required to do, and, so, those generalized
4  agreements at various points, if that's what they are, have to
5  be evidence for me to make that determination on that basis.
6  MR. BERTA: And I apologize, because I'm not -- the
7  evidence is before the Court in the opening Kavanaugh
8  declaration, that every time you make -- you submit a video to
9  YouTube, it has a link to these terms of use and it says I
10  agree that the terms of the use --
11  THE COURT: But you're not -- you know, you're not
12  asking me to make the determination on each one of the
13  thousand-or-so uploadings, right? You're asking me to make the
14  determination on the basis of his two engagements with YouTube,
15  basic underlying engagements with YouTube.
16  MR. BERTA: Well, so, to this extent, I guess I would
17  disagree, your Honor, in that, even if -- first of all, under
18  the case law, if he is on -- if he sees the "I agree to the
19  terms of use," and he clicks on something below that, where he
20  has taken an action in reliance on the terms of use, that is a
21  click-wrap agreement, and the only reason I'm bringing up the
22  separate submissions is, for example, there's a Federal --
23  there's a Second Circuit Court of Appeals case that deals with
24  that sort of issue, where it was a little bit in the reverse,
25  where, rather than it being on this page and you clicking after

you've read the "I agree" part, in that case someone clicked something, something happened, and then they got some terms, and in that case, the Court found maybe the first time you're off the hook for not having seen the terms until after you've clicked, but when you have done it repeatedly there, as they had, one or two times a day, or whatever it is, and here a thousand times by Mr. Ligeri, it is no longer a defense for you to claim "I didn't see" it the one time, when you saw it the thousand additional times and you were on notice that these are the terms of use that govern your submissions to YouTube, and that's the *Register.com* case. So, I'm only pointing out the thousand submissions, because --

    THE COURT: Let's take the case. Let's assume that -- assume against what you contend the evidence is, that there are 775 uploadings without the agreement, then there is one agreement, then there's no more. But you're saying that that then would mandate on the choice of forum that it go to California?

    MR. BERTA: I am not -- I am not saying that, your Honor.

    THE COURT: Okay. What you're saying is that everything he does thereafter, from 2006 forward, to the degree that it's related to the website is governed by this initial term of use.

    MR. BERTA: That's right.

1     THE COURT: So that you don't have to get into which
2  of the thousand or so governs and whether it governs after an
3  uploading or not. Right?
4     MR. BERTA: Yes, your Honor. Although --
5     THE COURT: I mean, you tell me this, and if you want
6  to make it so complex as to require extended discovery on this
7  precise issue, you can. I'm not sure that that's what you want
8  to do, and it seems to me that you can rise and fall on the
9  2006, Exhibit A, can't you?
10     MR. BERTA: Fair enough, your Honor. Again, I believe
11  that his actions in creating an account after saying "I agree
12  to the terms of use" is necessary and is sufficient for us to
13  have reached an agreement on the terms of use applicable.
14     THE COURT: Mm-hmm.
15     MR. BERTA: Yes, your Honor.
16     THE COURT: Okay.
17     So, Mr. Ligeri, let's go back to this. There is, even
18  in the snippet that you've given me, which is shown at page 4
19  of 6 in document 16-12, 16 dash 12, in this case, there is a
20  submission that indicates an agreement, isn't there?
21     MR. LIGERI: I'm sorry, your Honor. Did you say there
22  was a submission?
23     THE COURT: Right.
24     MR. LIGERI: I don't know what page we're on,
25  actually.

12

1  THE COURT: You saw "I certify I'm over 13 years old,"
2  you saw "I agree to," and then there is the signup, right?
3  MR. LIGERI: Correct. Well, I'm not saying I saw that
4  or agreed to it, I'm just arguing about --
5  THE COURT: Did you sign up?
6  MR. LIGERI: -- about the code itself. Yes.
7  THE COURT: Did you sign up? And in order to sign up,
8  you have to go down through each one of these issues. Whether
9  you looked at it or not, you have to go down each one of these
10 points, don't you?
11 MR. LIGERI: You have to -- the required fields are
12 "User Name," "Date of Birth," "Gender." Once you do that, you
13 can click "Signup." There's no other required fields.
14 THE COURT: You mean, you don't see this; it's not on
15 the screen?
16 MR. LIGERI: It's on the screen.
17 THE COURT: So --
18 MR. LIGERI: I'm assuming it is.
19 THE COURT: Just a moment.
20 MR. LIGERI: I don't recall, your Honor. Sorry.
21 THE COURT: So, your defense is you didn't look at it;
22 it's on the screen, but you didn't look at it.
23 MR. LIGERI: To that, sure.
24 THE COURT: Well --
25 MR. LIGERI: Can I clarify, your Honor?

1                THE COURT:  Sure.
2                MR. LIGERI:  I've signed up for up to 50 accounts in a
3       day.  Sometimes the terms of use -- if you sign up to
4       google.com the terms of use are displayed before the signup
5       button, and you can scroll down.  Adobe makes you go all the
6       way down and scan the terms before you can sign up.  There is a
7       lot of precautions that a big internet company can do if they
8       want you to read them.  A lot of them just throw them in there
9       in a very slight of hand.  When he's talking about a submission
10      page, it's a grayed-out font that you can barely see that says
11      I agree to them.
12               THE COURT:  But you can't go any farther if you don't
13      do it, though, right, if you don't sign up?
14               MR. LIGERI:  You can't go any further if you don't
15      sign up for YouTube?
16               THE COURT:  Mm-hmm.
17               MR. LIGERI:  Well, you have to click the signup
18      button --
19               THE COURT:  Mm-hmm.
20               MR. LIGERI:  -- but you don't have to agree.  I've
21      never seen terms when I've submitted a video as you've said,
22      your Honor.
23               THE COURT:  Okay.  Well, that's a different issue.
24               MR. LIGERI:  Right.
25               THE COURT:  That's why I raised the question of 2006,

1     2007 --
2              MR. LIGERI:  Okay.
3              THE COURT:  -- Exhibits A and B.  Frankly, I can't see
4     any way to say that you're not subject to the terms of use
5     here.  I've read through your submissions.  They seem -- they
6     are out of focus in many ways, and, so -- but the sole issue is
7     the question of dismissal or transfer.
8              MR. LIGERI:  So, your Honor, what the effect of that
9     would be is any time someone -- any web page writes anything on
10    a page that says "I agree", by continuing -- by seeing that
11    page in any way, you're automatically agreeing to whatever that
12    link might provide?  We don't even know what the link goes to.
13             THE COURT:  I don't know if you draw that conclusion;
14    I'm not sure it's a proper conclusion to draw.
15             But, here I have someone who is skilled and
16    experienced in the use of the internet, who tells me that he
17    does 50 of these agreements a day, signups a day, and the
18    defense is that you didn't read it.  That strikes me as not
19    something that I'm going to support by saying that you're free
20    from the agreement or you can pick and choose what parts of the
21    agreement that you want to have yourself adhere to.
22             And, so, we're back to the question of dismissal and
23    transfer.  The difference between dismissal and transfer,
24    frankly, is this.  Dismissal's the ordinary mechanism for
25    dealing with it, that is, failure to adhere to a forum

1  selection clause, as is clearly in the terms of use here.
2  Transfer would mean that I'd send it out to the Northern
3  District of California. I don't believe that there's a
4  dispute. I'm not sure that there is a -- is there a courthouse
5  in San Mateo County?
6       MR. BERTA: There is not a courthouse located in San
7  Mateo County, your Honor.
8       THE COURT: But you don't contend that that means that
9  this, necessarily, requires that the case go to the San Mateo
10 Superior Court.
11      MR. BERTA: That's correct, your Honor.
12      THE COURT: It could go to the Northern District of
13 California, because San Mateo County is in the Northern
14 District.
15      MR. BERTA: That's right, your Honor.
16      THE COURT: Okay. So, the choice is, you pay a fee to
17 start the case again, if the case is dismissed. If it's
18 transferred, you don't pay the fee.
19      MR. LIGERI: Is your ruling done, your Honor?
20      THE COURT: Pretty much. I mean --
21      MR. LIGERI: There were a lot of other objections I
22 had to the terms beside the mere fact --
23      THE COURT: I've read your brief. The only thing that
24 had any substance to it, as far as I was concerned, was the
25 question of whether or not you actually went through the terms

1    in order to get to the signup.  So --

2             MR. LIGERI:  Can I have 30 seconds for a surreply,
3    your Honor?

4             THE COURT:  Well, no.  It's not -- this part isn't
5    interactive.  You get an opportunity to brief it.  You took a
6    little bit more than the customary 20 pages to do it.  I've
7    read it, I've looked at it very carefully, I've listened to
8    what you have to say, and at some point there's a certain
9    finality.  And, so, we've reached that point of finality, and
10   the sole question, as far as I'm concerned, is, do I transfer
11   this or do I dismiss it outright, and I'm prepared to do either
12   one in deference to your position as a *pro se* litigant.

13            But I'm telling you what I think is the principal
14   difference between the two.  One is, I dismiss it, and if you
15   want to bring it again, you're going to have to -- you have to
16   bring it in San Mateo County or in the Northern District of
17   California, and you have to pay another fee.  If it's
18   transferred, then it's out there, but that's where it's going
19   to be.  You don't pay the fee, because it's transferred.

20            MR. LIGERI:  Well, your Honor, either way, it ends the
21   case for me, so I have no choice but to appeal that ruling.

22            THE COURT:  Okay.  Then, I'm going to dismiss it under
23   these circumstances, because I find that it's been filed in the
24   wrong jurisdiction under the forum selection clause that the
25   parties have agreed to.

1        MR. LIGERI: Your Honor, can I ask where the forum
2   selection clause is? Because there isn't a forum selection
3   clause.
4        THE COURT: I guess I should say venue and forum
5   selection. It's where the case has to be brought.
6        MR. LIGERI: I'm just saying they don't have an actual
7   forum selection clause in their terms of use, they have a
8   general clause that mentions, alludes to the forum that you
9   have to choose. I don't know if that's a clause.
10       THE COURT: I'll tell you, that's a forum selection
11  clause by any other name.
12       MR. LIGERI: I don't feel, also, that a layman can
13  read those terms legally, your Honor.
14       THE COURT: Okay. Well, you've said that in your
15  filings and I've read them, but the short of it is that I will
16  allow the motion as a motion to dismiss here, because the case
17  is brought in the wrong court. It is to be brought in the
18  court of competent jurisdiction in San Mateo County of
19  California. It was not, and, for those reasons, may not
20  properly proceed here.
21       So, the Clerk will, relatively promptly, issue
22  judgment based on that, and the time for your appeal runs from
23  the date of the judgment.
24       MR. LIGERI: Thank you, your Honor.
25       THE COURT: Okay? All right. We will be in recess.

1          THE DEPUTY CLERK:  All rise.
2    (Proceedings adjourned at 2:20 p.m.)

C E R T I F I C A T E

I, Brenda K. Hancock, RMR, CRR and Official Reporter of the United States District Court, do hereby certify that the foregoing transcript, from Page 1 to Page 18, constitutes, to the best of my skill and ability, a true and accurate transcription of my stenotype notes taken in the matter of Ligeri v. YouTube, No. 1:08-cv-11394-DPW.

/s/ *Brenda K. Hancock*

Brenda K. Hancock, RMR, CRR

Official Court Reporter